# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

STEPHEN FLOYD ULLRICH,

                                    Petitioner,

vs.

ATTORNEY GENERAL OF THE STATE
OF CALIFORNIA, et al.,

                                    Respondents.

Civil No.    05cv1051-L (POR)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

This Report and Recommendation is submitted to United States District Judge M. James Lorenz, pursuant to 28 U.S.C. § 636(b) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

## I.

## FEDERAL PROCEEDINGS

Stephen Floyd Ullrich, (hereinafter "Petitioner"), is an Idaho state prisoner proceeding pro se and in forma pauperis with a First Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, challenging his 1997 San Diego County Superior Court conviction for petty theft with a prior, entered pursuant to a guilty plea. (Doc. No. 5.) Petitioner initiated this action eight years after he was convicted, and now contends his plea was obtained in violation of his federal due process rights because he was mentally unbalanced when he entered

the plea, and because he is actually innocent of the offense to which he pled guilty. (First Amended Petition "FAP" at 6-7.) Respondent Attorney General of the State of California, (hereinafter "Respondent"),[1] initially filed a Motion to Dismiss on the grounds that: (1) this action was not filed within the one-year statute of limitations; (2) Petitioner had not exhausted his state court remedies with respect to either claim presented in the FAP; and (3) Petitioner's status as a fugitive warrants dismissal under the fugitive disentitlement doctrine. (Doc. Nos. 8-9.) Respondent lodged portions of the state court record in support of the Motion (Doc. No. 10), and Petitioner filed an Opposition (Doc. No. 11).

On January 12, 2006, the undersigned Magistrate Judge issued a Report and Recommendation finding that Petitioner was a fugitive who did not satisfy the "in custody" requirement of 28 U.S.C. § 2254, and, alternately, that the FAP was time-barred, and that Petitioner had failed to exhaust his state court remedies. (Doc. No. 12.) The Magistrate Judge therefore recommend that Respondent's Motion to Dismiss be granted.

Petitioner filed Objections to the Report and Recommendation along with a "Motion to Attach Facts," setting forth arguments and allegations which had not been presented in opposition to the Motion to Dismiss. (Doc. Nos. 14-15) On July 3, 2006, United States District Judge M. James Lorenz granted Petitioner's Motion to Attach Facts, and remanded with instructions to reconsider the Motion to Dismiss in light of Petitioner's new arguments, after providing both parties with an opportunity for additional briefing. (Doc. No. 16.)

Petitioner thereafter filed an Amended Opposition to the Motion to Dismiss. (Doc. No. 20.) Respondent filed a Reply to Petitioner's Amended Opposition, along with the declaration of Susan Volsky. (Doc. Nos. 22-23.) Petitioner filed a Surreply. (Doc. No. 26.)

For the following reasons, the Court finds that Petitioner's claims are exhausted, that the fugitive disentitlement doctrine should not be applied here, and that this action is untimely. Accordingly, the Court recommends that Respondent's Motion to Dismiss be **GRANTED** in part and **DENIED** in part, and that the Petition be **DISMISSED** with prejudice as untimely.

---

[1] Petitioner also names the San Diego County Probation Officer as an alternate Respondent because Petitioner was on probation in San Diego County when he was imprisoned in Idaho. However, the Probation Officer has not made an appearance in this action.

## II.

## STATE PROCEEDINGS

On March 5, 1997, Petitioner entered a guilty plea to petty theft with a prior theft-related conviction, in violation of California Penal Code §§ 484 and 666. (Lodgment No. 1 at 1-2.) On April 10, 1997, Petitioner was sentenced to 365 days in custody of the County Sheriff, to be followed by three years of formal probation, and received two fines which were converted into an additional 16 days of custody to run concurrent with the jail sentence. (Lodgment No. 2 at 1.) Petitioner's probation was revoked for "failure to appear" on November 6, 1998, after his arrest in Idaho where he has remained incarcerated, and a bench warrant was issued which remains outstanding. (Lodgment No. 3.)

Petitioner challenged his conviction in a habeas petition filed in the state supreme court on June 2, 2004. (Lodgment No. 4.) He sought habeas relief in that court on the same basis set forth in a motion to withdraw his guilty plea, which he contended he had mailed to the San Diego County Superior Court at some unstated date but had never received a ruling or even conformation of receipt by that court. (Id. at 3, 11.) Attached to the state supreme court habeas petition is a document which purports to be a copy of the motion to withdraw the plea, which is dated March 8, 2004, but does not contain a file stamp. (Id. at 25-45.) Petitioner claimed in the motion to withdraw his plea that he was incompetent to enter a plea due to diminished capacity, and that federal law provided that he must be allowed to withdraw his guilty plea. (Id.) In the section of the state habeas petition form which asked Petitioner to: "Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)", Petitioner stated: "Psychological - I did not know I had a felony conviction/and did not know I was on probation." (Id. at 6.)

The California Supreme Court denied the petition on April 20, 2005, with an order which stated: "Petition for writ of habeas corpus is DENIED. (See *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Swain* (1949) 34 Cal.2d 300, 304.) [¶] George, C.J., was absent and did not participate." (Lodgment No. 5.) Petitioner initiated this action on April 28, 2005, the date he handed his federal petition to the prison authorities for mailing to the Court. (See Pet. at 6.)

# III.

## DISCUSSION

Respondent moves to dismiss the Petition on the basis it was filed almost seven years after the expiration of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d), arguing that Petitioner is not entitled to statutory or equitable tolling of the statute of limitations. Respondent also contends that both claims presented here are unexhausted, because the actual innocence claim was never presented to any state court, and because the state supreme court's denial of the invalid plea claim with a citation to <u>Swain</u> means the claim was never properly presented to that court. Finally, Respondent contends the FAP should be dismissed under the fugitive disentitlement doctrine due to Petitioner's status as a fugitive.

Petitioner argues that: (1) he has exhausted his claims because he presented them to the state supreme court in his habeas petition but they were ignored; (2) this action is not untimely because he challenged his state conviction within a year of discovering he was on probation, and that he is in any case entitled to tolling of the statute of limitations; and (3) the fugitive disentitlement doctrine should not be applied here since he had been released from custody for fourteen months without being required to report to a probation officer, and his probation was only revoked after his arrest in Idaho on unrelated charges.

## A.    Petitioner's Claims are Exhausted.

Respondent first contends that Petitioner has not exhausted his state court remedies with respect to his claims because he has never presented his actual innocence claim to any state court, and because the invalid plea claim was not properly presented to the state supreme court. (Resp.'s MTD at 3-4.)  Petitioner alleges his claims are exhausted by virtue of his presentation of the claims to the state supreme court in the habeas petition he filed in that court.  (FAP at 4-7; Pet.'s Opp. at 11.)

The exhaustion of available state judicial remedies is generally a prerequisite to a federal court's consideration of claims presented in habeas corpus proceedings.  28 U.S.C. § 2254(b); <u>see</u> <u>Rose v. Lundy</u>, 455 U.S. 509, 522 (1982); <u>McQueary v. Blodgett</u>, 924 F.2d 829, 833 (9th Cir. 1991).  To satisfy the exhaustion requirement a petitioner must provide the state courts with

a "fair opportunity to apply controlling legal principles to the facts bearing upon his [or her] constitutional claim." Anderson v. Harless, 459 U.S. 4, 6 (1982). The exhaustion requirement assures the state courts of the "initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (quoting Wilwording v. Swenson, 404 U.S. 249, 250 (1971)).

In Lyons v. Crawford, 232 F.3d 666 (9th Cir. 2000), as amended 247 F.3d 904 (9th Cir. 2001), the Ninth Circuit articulated two methods a habeas petitioner can use to exhaust a claim in state court: "We hold that a petitioner for habeas corpus relief under 28 U.S.C. § 2254 exhausts available state remedies only if he characterized the claims he raised in state proceedings *specifically* as federal claims. In short, the petitioner must have either referenced specific provisions of the federal constitution or statutes or cited to federal case law." Id. at 670. The Court left open a third possibility of citation to pertinent state case law which explicitly applies federal law. Id. at 670 n. 3 (emphasis in original). Petitioner satisfied the first two methods when presenting his invalid plea claim to the state supreme court, where he characterized that claim as a federal claim and cited relevant federal authority. (See Lodgment No. 4 at 3 and Ex. 1 at 19-20.) That claim is therefore exhausted. Lyons, 232 F.3d at 670.

Respondent contends that, notwithstanding the fact that Petitioner actually presented the invalid plea claim to the state supreme court, the manner in which the claim was presented renders it unexhausted because Petitioner deprived the state supreme court of the opportunity to address the claim due to the violation of a state procedural rule. (Resp.'s MTD at 3-4.) The state supreme court denied the habeas petition with an order which stated in full: "Petition for writ of habeas corpus is DENIED. (See *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Swain* (1949) 34 Cal.2d 300, 304.) [¶] George, C.J., was absent and did not participate." (Lodgment No. 5.)

Even assuming Respondent is correct that a procedural bar was imposed which precluded the state court from addressing Petitioner's invalid plea claim, the exhaustion requirement would be satisfied if "it is clear that [Petitioner's] claims are now procedurally barred under [state] law." Gray v. Netherland, 518 U.S. 152, 161 (1996) (quoting Castille v. Peoples, 489 U.S. 346,

351 (1989)); <u>Engle v. Isaac</u>, 456 U.S. 107, 125-26 n.28 (1982) (noting that the exhaustion requirement applies "only to remedies still available at the time of the federal petition."); <u>Valerio v. Crawford</u>, 306 F.3d 742, 770 (9th Cir. 2002) (same) (citing <u>Phillips v. Woodford</u>, 267 F.3d 966, 974 (9th Cir. 2001) ("the district court correctly concluded that Phillip's claims were nonetheless exhausted because 'a return to state court would be futile.'") (quoting <u>Isaac</u>, 456 U.S. at 125-26 n.28)).  "A habeas petitioner who has defaulted his federal claims in state court meets the *technical* requirements for exhaustion; there are no state remedies any longer 'available' to him." <u>Cassett v. Stewart</u>, 406 F.3d 614, 621 n.5 (9th Cir. 2005) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991)), <u>cert. denied</u>, 126 S.Ct. 1336 (2006).

Respondent contends that state remedies remain available to Petitioner in the form of a new habeas petition in the state supreme court wherein he establishes good cause for the delay under <u>In re Robbins</u>, 18 Cal.4th 770, 780 (1998).  (Resp.'s Reply to Amended Opp. at 7 n.4.) Respondent also contends the citation to <u>Ex parte Swain</u>, 34 Cal.2d 300, 304 (1949), in denying Petitioner's invalid plea claim indicates that Petitioner is free to file a new habeas petition in the state supreme court in which he presents his invalid plea claim with more specificity.  (<u>Id.</u>) However, the citations to <u>Robbins</u> and <u>Swain</u> by the state supreme court, and in particular the reference to the specific pages of those opinions, clearly indicates that Petitioner's claims were untimely and that he had failed to adequately explain his delay in presenting the claims.  <u>See Robbins</u>, 18 Cal.4th at 780 (setting forth "analytical framework governing our timeliness determinations."); <u>Swain</u>, 34 Cal.2d at 304 ("We are entitled to and we do require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned <u>and</u> that he fully disclose his reasons for delaying in the presentation of those facts.") (emphasis added).  The form habeas petition used by Petitioner in the state supreme court contained a section where Petitioner was required to: "Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)"  (Lodgment No. 4 at 6.)  Petitioner stated in response: "Psychological - I did not know I had a felony conviction/and did not know I was on probation."  (<u>Id.</u>)  Petitioner's invalid plea claim was presented in that petition with a great deal of particularity and with

1    citations to relevant federal law, rendering it unlikely the state court was referring to that aspect

2    of Swain invoking the particularity requirement.  (Id. at 3 and Ex. 1 at 19-21.)

3          However, even if the reference to Swain was intended to refer to the particularity

4    requirement, it is clear the claims were also rejected as untimely.  Petitioner's excuse for delay

5    in presenting his claims to the state court under Swain was rejected by the state court with a

6    citation to the same page of the Swain opinion as set forth in the form petition requesting an

7    explanation for any delay, and was also rejected with a citation to that portion of the Robbins

8    opinion which deals with timeliness.  Thus, irrespective of whether Petitioner properly presented

9    his invalid plea claim in the state habeas petition, it is clear such a claim is now time-barred, and

10   he has therefore met the technical requirement for exhaustion as to that claim.  Cassett, 406 F.3d

11   at 621 n.5.  With respect to Petitioner's actual innocence claim, the record does not support

12   Petitioner's allegation that he presented that claim to the state supreme court in the habeas

13   petition.  However, it is clear that Petitioner no longer has state court remedies available to him

14   with respect to this claim because it is procedurally barred as untimely for the same reason the

15   invalid plea claim is now barred as untimely.  Id.  The Court therefore finds that Petitioner's

16   claims are exhausted, and recommends denying Respondent's Motion to Dismiss in part to the

17   extent it seeks dismissal of the Petition on the basis that the claims are unexhausted.

18   **B.**     **The Fugitive Disentitlement Doctrine Should Not Bar This Action.**

19         Respondent contended in the Motion to Dismiss that this action should be dismissed on

20   the basis that Petitioner is a fugitive.  (Resp.'s MTD at 2-3.)  Petitioner argued in opposition that

21   although he is technically a fugitive, it is unfair to dismiss this action on that basis because he

22   is a fugitive only due to the imposition of an unconstitutional conviction, and because he only

23   learned that he was on probation after he was incarcerated in Idaho.  (Pet.'s Opp. at 7.)  In his

24   Objections to the R&R, Petitioner contended that he never escaped from custody, because during

25   the fourteen months between his release from San Diego County Jail in August of 1997 and his

26   arrest in Idaho in November 1998, he was not subject to any probation reporting requirements

27   whatsoever, and that despite the fact that he never reported during that period his probation was

28   only violated after his Idaho arrest.  (Pet's Obj. to R&R at 3-5.)

In the Order remanding for further briefing on this issue, District Judge Lorenz noted that "Petitioner does not describe the circumstances when he learned he was subject to probation, the date when he discovered this fact, and the reasons for the delay in discovering it." (7/3/06 Order at 5.)  Judge Lorenz also found that because Petitioner did not have access to the pertinent state court records, Respondent should serve Petitioner with the exhibits attached to the Notice of Lodgment in this action, that Petitioner should be allowed to amend his opposition brief in light of those documents, and that the parties should brief the applicability of the fugitive disentitlement doctrine under Degen v. United States, 517 U.S. 820, 823 (1996).  (Id.)

Petitioner now contends that Respondent should bear the burden of establishing that Petitioner was aware he was on probation when he left California.  (Amended Opp. at 4-5.) Respondent replies that consideration of the equities as set forth in Degen counsel in favor of dismissal because: (1) it would be difficult to produce Petitioner if an evidentiary hearing is held and difficult to provide him relief; (2) it would be unfair to allow Petitioner to challenge his conviction without having to answer for his probation violation, which might result in imposition of a three-year term of imprisonment; (3) dismissing the action would deter others from absconding from probation; (4) the passage of time makes it difficult to litigate his claims; and (5) Petitioner has flouted the authority of the San Diego Superior Court by violating the terms of his probation.  (Resp.'s Reply to Amended Opp. at 8-9.)

A habeas petitioner who challenges a state court conviction must establish he is "in custody in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2254(a). A petitioner can meet this requirement either by actual custody of if he or she suffers from substantial restraints not shared by the public generally as a result of the conviction he or she is challenging, such as the terms of probation.  United States v. Span, 75 F.3d 1383, 1386 n.5 (9th Cir. 1996); United States v. Gaudin, 28 F.3d 943, 965 (9th Cir. 1994) (en banc); Benson v. California, 328 F.2d 159, 162 (9th Cir. 1964).  As District Judge Lorenz noted, because Petitioner filed his Petition while on probation for the conviction which he is challenging, he has satisfied the "in custody" requirement.  (See 7/3/06 Order at 4.)

/ / /

1    The fugitive disentitlement doctrine recognizes that "escape from custody is inconsistent

2 with the pursuit of judicial remedies and constitutes a voluntary waiver of any pending judicial

3 review of a criminal conviction." <u>United States v. Murgia-Oliveros</u>, 421 F.3d 951, 954 (9th Cir.

4 2005), <u>cert. denied</u>, 126 S.Ct. 1108 (2006). Dismissal under this doctrine "is a severe sanction

5 that courts should not lightly impose." <u>Id.</u>; <u>Degen</u>, 517 U.S. at 828. The Ninth Circuit has twice

6 found that the doctrine is not directly implicated when the defendant has not escaped from

7 incarceration but has merely violated the terms of probation. <u>United States v. Gonzalez</u>, 300

8 F.3d 1048, 1051 (9th Cir. 2002); <u>United States v. Van Cauwenberghe</u>, 934 F.2d 1048, 1054-55

9 (9th Cir. 1991).

10    Petitioner here contends that he was unaware that he was on probation when he left

11 California, and that he left California without any intention of returning when he was arrested

12 in Idaho, where he remains incarcerated. (Pet.'s Amended Opp. at 5.) He argues that the fact

13 that he had been released from custody for over fourteen months without ever being required to

14 report to a probation officer or having his probation revoked for failing to do so, and the fact that

15 he did not have his probation violated until after he was arrested in Idaho on charges unrelated

16 to his probation, supports his contention that he was unaware he was on probation. (<u>Id.</u> at 4-5;

17 Pet's Obj. to R&R at 3-5.)

18    Respondent has made no effort to explain why Petitioner's probation was not violated

19 sooner than it was, despite the fact that he had been released from custody for over a year

20 without reporting. If Petitioner were to succeed on his claims, he would merely be permitted to

21 withdraw his guilty plea and be subject to prosecution the same as any defendant incarcerated

22 in another jurisdiction. Moreover, because this action is untimely, the Court will not reach the

23 merits of the claims, and Petitioner will not need to be produced for an evidentiary hearing and

24 no unfairness to Respondent will result. Furthermore, the Ninth Circuit has yet to apply such

25 a severe sanction to a petitioner who has merely violated the terms of probation rather than

26 escaped from physical custody. Accordingly, the Court finds it unwarranted to apply the fugitive

27 disentitlement doctrine in this action, and recommends denying in part Respondent's Motion to

28 Dismiss the Petition to the extent it seeks dismissal on this basis.

**C.      The Statute of Limitations Expired Prior to the Filing of this Action.**

28 U.S.C. § 2244(d) sets forth the standard for determining when the statute of limitations begins to run:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d)(1)(A)-(D) (West Supp. 2006).

Respondent contends the statute of limitations began to run when the judgment became final at the conclusion of direct review as defined in § 2244(d)(1)(A).  Calculating in that manner, Respondent contends Petitioner's conviction became final on June 9, 1997, 60 days after entry of the state court judgment on April 10, 1997, the day Petitioner pled guilty. (Resp.'s Reply to Amended Opp. at 5-6.)  Respondent contends that, absent tolling, the statute of limitations expired on June 9, 1998.  (Id.)  Respondent also contends that because there is no basis for tolling, the instant action, which Respondent contends was commenced upon filing of the original Petition on May 12, 2005, was filed almost seven years late.  (Id.)

Petitioner argues that the beginning of the limitations period should be calculated under several scenarios.  First he contends it began to run after the removal of an impediment to his filing a challenge to his conviction created by state action within the meaning of § 2244(d)(1)(B), arguing that his ability to discover the fact that he was on probation was

interfered with by the state's failure to accommodate his disability, and because the probation department waited fourteen months after he was released on probation to issue a warrant for arrest or take any action regarding his failure to report.  (Pet.'s Amended Opp. at 4, 15.) Petitioner alternately contends the limitations period began to run on May 17, 2004, the day the Supreme Court announced <u>Tennessee v. Lane</u>, 541 U.S. 509 (2004), arguing that the <u>Lane</u> case established a newly recognized constitutional right within in the meaning of § 2244(d)(1)(C). (Opp. at 2-3.)  Finally, Petitioner alternately contends the statute of limitations began to run when he discovered the factual predicate of his claim within the meaning of 28 U.S.C. § 2244(d)(1)(D), which he contends was when he discovered that he was on probation, a date he continues to refuse to divulge despite Judge Lorenz' direction to do so.  (Opp. at 3.)

**1.      The Statute of Limitations began to run on June 10, 1997.**

For the following reasons, the Court finds, as it did in the original R&R, that because Petitioner is unable to establish that the statute of limitations is to be calculated under any other provision of § 2244(d)(1) beside subsection (A), it is to be calculated from the date the conviction became final.  That date is June 10, 1997.

**a)      § 2244(d)(1)(A)**

The statute of limitations is calculated to run under § 2244(d)(1)(A) from the conclusion of direct review or the expiration of time for seeking such review.  <u>Bowen v. Roe</u>, 188 F.3d 1157, 1159 (9th Cir. 1999).  Petitioner was convicted on April 10, 1997.  Because he did not appeal, his conviction became final on the last day which he could file an appeal, which was Monday, June 9, 1997.  <u>Id.</u>; <u>In re Arthur N.</u>, 36 Cal.App.3d 935, 941 (1975).  The statute of limitations as calculated under § 2244(d)(1)(A) began to run the next day, June 10, 1997. <u>Patterson v. Stewart</u>, 251 F.3d 1243, 1246 (9th Cir. 2001).

**b)      § 2244(d)(1)(B)**

Petitioner's argument that there was an impediment to his filing a challenge to his conviction created by state action within the meaning of § 2244(d)(1)(B), is the same argument set forth in connection to § 2244(d)(1)(C) and (D), where he contends his ability to discover the fact that he was on probation was interfered with by the state's failure to accommodate his

disability, and because the probation department waited fourteen months after he was released on probation to issue a warrant for his arrest or to take any action regarding his failure to report. (Pet.'s Amended Opp. at 4, 15.)  As discussed immediately below, the record does not support a finding that Petitioner was hampered in any manner in challenging his conviction due to state action, but that it was his own lack of diligence which caused his federal petition to be untimely.

**c)      § 2244(d)(1)(C)**

Petitioner contends the statute of limitations began to run under § 2244(d)(1)(C) on May 17, 2004, the date the United States Supreme Court announced its opinion in <u>Tennessee v. Lane</u>, 541 U.S. 509 (2004), which held that Title II of the Americans with Disabilities Act required states to make "reasonable modifications" to ensure that eligible persons with disabilities have adequate access to the courts of the state.  (Pet.'s Opp. at 2-3.)  Petitioner apparently contends that he fits the definition of a disabled individual on the basis of his mental condition, and that he was somehow precluded from challenging his conviction due either to his mental condition itself (discussed below with respect to equitable tolling), or due to the state's failure to accommodate his disability.

Petitioner's argument fails for several reasons.  First, the right which Petitioner asserts here is not a denial of access to the courts due to the state court's failure to accommodate his disability, which was the <u>statutory</u> right recognized in <u>Lane</u>.  Petitioner contends that he is actually innocent of the crime to which he pled guilty and that he was incompetent to enter the plea due to his mental condition.  The rights Petitioner seeks to vindicate in this action were well established long before he entered his guilty plea.  <u>Dusky v. United States</u>, 362 U.S 402, 402 (1960) (stating constitutional standard for determining mental competence to enter guilty plea); <u>North Carolina v. Alford</u>, 400 U.S. 25, 38 (1970) (stating constitutional standard for acceptance of guilty plea from a putatively innocent defendant).  Second, Petitioner has not alleged any state-created barrier which interfered with his ability to challenge his conviction.  Rather, as discussed below, he merely alleges that he was released from custody for fourteen months without the probation office taking any action, which in turn prevented him from discovering he was on probation until after the time had passed to challenge his state conviction.  Thus, there

1    is no allegation of a state-created impediment to a challenge to his <u>conviction</u>, merely an

2    allegation of a state-created impediment to discovering he was on probation. Petitioner is not

3    challenging here or in the state courts the imposition of probation or the violation of its terms,

4    but challenges the conviction for which he spent approximately one year in jail. His alleged

5    inability to understand that he was sentenced to a period of probation to follow his incarceration

6    in no way implicates his ability to challenge his conviction on the basis that he was actually

7    innocent of the charge or that he was incompetent to plead guilty. Finally, even assuming

8    Petitioner is contending that he was somehow denied access to the courts due to a mental

9    disability which precluded him from understanding at the time he was convicted that he had been

10   sentenced to a term of probation, and further assuming that <u>Lane</u> announced a rule which is

11   somehow relevant here, the rule announced in <u>Lane</u> has never been "made retroactively

12   applicable to cases on collateral review" as required by § 2244(d)(1)(C). <u>Tyler v. Cain</u>, 533 U.S.

13   656, 664 (2001). Thus, there is no basis for applying § 2244(d)(1)(C) in this action.

14           **d)       § 2244(d)(1)(D)**

15           Finally, Petitioner contends that the statute of limitations began to run when he became

16   aware of the factual predicate of his claim within the meaning of § 2244(d)(1)(D). He contends

17   he "filed within a year or less" of discovering a warrant for his arrest had been issued. (Plt.'s

18   Opp. at 4.) Petitioner states that he was arrested in Idaho on September 18, 1998, approximately

19   13 months after he was released from jail in San Diego, and that his probation was violated on

20   November 6, 1998. (<u>Id.</u> at 3.) In the Order remanding this matter, District Judge Lorenz noted

21   that Petitioner had failed to allege when he had discovered that a warrant had been issued for his

22   arrest for violating probation, other than when he attempted to challenge his Idaho detention.

23   (<u>See</u> 6/3/06 Order at 5.) In response, Petitioner contends that if the probation department had

24   not waited fourteen months to revoke his probation, or if his medical disability had been

25   accommodated, he might have discovered that he was on probation in time to timely file a

26   collateral attack. (Pet.'s Amended Opp. at 4, 15.) Petitioner once again fails to identify the date

27   he discovered his probation had been violated. As discussed below with respect to tolling,

28   Petitioner also once again fails to identify the date he first challenged his California conviction.

Rather, he states that he sent a motion to withdraw his guilty plea to the state superior court at some unidentified date, and that on December 5, 2003, he sent a letter to the San Diego County Superior Court asking about the status of his motion to withdraw his guilty plea. (Amended Opp. at 10.) However, as stated above, the factual predicate of his claim did not arise when he learned that his probation had been violated or even when he learned that he was on probation. The factual predicate of his claim of actual innocence and incompetence to enter a plea occurred when he entered his plea on March 5, 1997. To the extent he contends he was not aware that he was actually innocent of the crime or that he was incompetent to plead guilty due either to his mental condition or the failure of the state to accommodate his disability, such contentions are without merit for the reasons discussed below with respect to equitable tolling.

Accordingly, the Court finds that the statute of limitations began to run as to Petitioner's claims on June 10, 1997, the day after his conviction became final. Absent tolling of the statute of limitations, therefore, the last day Petitioner could have timely filed a federal habeas petition would have been June 10, 1998. Petitioner initiated this action on April 28, 2005, the date he handed his federal habeas petition to the prison authorities for mailing to the Court. (See Pet. at 6.) Absent tolling, the instant action was commenced nearly seven years late.

**2.      Petitioner is not Entitled to Tolling of the Statute of Limitations.**

The one-year statute of limitations is subject to both statutory and equitable tolling. In the Order remanding this action, District Judge Lorenz found that the parties should be given an opportunity to ascertain the date of Petitioner's state court filings and the reasons given for their denial. (See 7/3/06 Order at 6.) The Court also found that Petitioner should be permitted the opportunity to show why equitable tolling applies in this case. (Id. at 6-7.) The Court has considered the amended arguments in this regard, and for the following reasons finds that Petitioner is not entitled to either statutory or equitable tolling.

**a)      Statutory Tolling**

The statute of limitations is tolled while a "properly filed" state habeas corpus petition is "pending" in the state court. 28 U.S.C. § 2244(d)(2). Under the holding of Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), the "statute of limitations is tolled from the time the first

state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge," provided the petitions were properly filed and pending that entire time. The meaning of the terms "properly filed" and "pending" in <u>Nino</u> have since been clarified by the United States Supreme Court in the <u>Carey</u>, <u>Pace</u> and <u>Chavis</u> decisions. In <u>Carey v. Saffold</u>, 536 U.S. 214 (2002), the Court held that the time between the denial of a petition in a lower California court and the filing of a subsequent petition in the next higher state court does not toll the statute of limitations (i.e., an application for post-conviction relief is not "pending" during the interstitial periods while one is pursuing a full round of state collateral review), if the petition is ultimately found to be untimely. <u>Id.</u> at 223-26. In <u>Pace v. DiGuglielmo</u>, 544 U.S. 408 (2005), the Court held that statutory tolling is not available for the period a petition is under consideration (i.e., an application for post-conviction relief is not "properly filed"), if it is ultimately dismissed as untimely. <u>Id.</u> at 413-14. In <u>Evans v. Chavis</u>, 546 U.S. 189, 126 S.Ct. 846 (2006), the Court held that in the absence of a clear indication by the California Supreme Court that a petition is untimely, "the federal courts must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." <u>Chavis</u>, 546 U.S. at ___, 126 S.Ct. at 852.

In the present case, Petitioner filed his first authenticated state petition for post-conviction review in the state supreme court on June 2, 2004, which was denied on April 20, 2005, and any statutory tolling would have ended on that date. <u>See</u> Cal. Rule of Court 29.4 (providing that a decision of California Supreme Court in denying a writ within their original jurisdiction issued after January 1, 2003 is final upon filing). That petition could not have statutorily tolled the statute of limitations because, as set forth above, it was denied as untimely. <u>Pace</u>, 544 U.S. at 413-14. Moreover, because the statute of limitations was set to expire on June 10, 1998, that habeas petition, filed nearly six years after the limitations period was set to expire, could not have statutorily tolled the statute of limitations absent some other basis for tolling.

Petitioner alleges that he filed other state petitions for post-conviction relief, in particular a motion to withdraw his guilty plea sent to the San Diego County Superior Court and a petition in the state appellate court, but that he never received confirmation from the state courts

regarding their receipt nor any ruling on his submissions.  Petitioner states that he submitted a letter to the superior court on December 5, 2003, inquiring of the status of the motion to withdraw his plea, but was informed by return letter dated February 15, 2004, that his motion had never been received.  (Amended Opp. at 10.)  Respondent has submitted the declaration of Susan Volsky, a Senior Legal Analyst with the California Attorney General's Office, who states that she contacted the clerk on the habeas corpus desk at the San Diego County Superior Court and requested a search of the court records from 1999 until the present for habeas corpus petitions filed by Petitioner in his state criminal case.  (Lodgment No. 6, Volsky Decl. ¶ 1-3.) Volsky also states that she checked the California Court of Appeal website and found no record of a habeas petition filed by Petitioner.  (Id. at ¶ 4.)

The Volsky declaration sheds no light on Petitioner's contention that he sent a motion to withdraw his guilty plea to the San Diego County Superior Court, because the declaration refers only to searches for habeas petitions.  Petitioner submits a copy of the motion to withdraw his plea in the superior court which is dated March 8, 2004, but contends that it was sent at an earlier, unstated date, and he alleges that he inquired of the superior court of the status of his motion on December 5, 2003.

In order for statutory tolling to have been available, Petitioner would have had to submit a state petition for post-conviction relief prior to the expiration of the statute of limitations on June 10, 1998, unless equitable tolling applied during that first year.  Because Petitioner contends that he did not challenge his California conviction until he learned that he had violated probation when he discovered a warrant for his arrest had been issued, the earliest possible date statutory tolling could have begun based on Petitioner's motion to withdraw his guilty plea was sometime after he became aware of his probation revocation.  As District Judge Lorenz noted in his remand Order, Petitioner had not described the circumstances in which he learned of his probation violation, the date he discovered that fact, nor the reasons for the delay.  (See 7/3/06 Order at 5.)  Although Petitioner now explains that the delay in discovering his probation violation was caused by the fact that he had been released from custody for fourteen months without having his probation violated, and therefore did not believe himself to be on probation,

or that the delay in discovering he was on probation was somehow caused by a failure to accommodate his disability, he continues to refuse to identify the date he became aware he was on probation or became aware that a warrant had been issued based on his probation violation. However, the record is clear that his probation was revoked and a warrant issued for his arrest on or about November 6, 1998.  Therefore, even if he was immediately notified that his probation had been violated and a warrant issued for his arrest, and he immediately submitted his motion to withdraw his plea, and he diligently and properly pursued his state court remedies from that point on, the motion to withdraw the plea was still submitted several months after the statute of limitations expired on June 10, 1998.

Moreover, even if Petitioner submitted his motion to withdraw his guilty plea prior to the expiration of the limitations period on June 10, 1998, he admits that he did not inquire about the status of his motion to withdraw his guilty plea until December 5, 2003.  Thus, even if he did file his motion to withdraw his guilty plea prior to the expiration of the statute of limitations, his lack of diligence in waiting nearly five years in following up on the status of the motion to withdraw his plea would preclude statutory tolling for the period the motion to withdraw was submitted but not ruled upon.  See Pace, 544 U.S. at 418 (stating that petitioner must show that he pursued "his rights diligently to obtain" tolling.)

In sum, Petitioner is not entitled to statutory tolling for the time the state supreme court habeas petition was pending because it was ultimately dismissed as untimely.  In addition, although Petitioner has not established that he filed any lower state court petitions or motions for collateral relief, even assuming he could, he would have embarked on collateral review in the state court after the statute of limitations had expired (absent equitable tolling during the first year the limitations period was running), and he would therefore not be entitled to statutory tolling for the time the lower state court petitions were pending.  Finally, even if the lower state court petitions were filed before the limitations period expired, they would not provide a basis for tolling due to Petitioner's lack of diligence in determining why they had not been ruled upon. Petitioner must therefore carry his burden of demonstrating that he is entitled to equitable tolling in order for this action to be timely.

05cv1051

**b)    Equitable Tolling**

Respondent initially contended that Petitioner had failed to carry his burden of demonstrating that he was entitled to equitable tolling because he had stated no grounds for equitable tolling.  (Resp.'s MTD at 4.)  District Judge Lorenz noted that Petitioner had not directly addressed equitable tolling in his opposition to the motion to dismiss, but found that it was unclear whether the allegations regarding his mental impairment could be read as having caused him to lose recollection of his guilty plea and probation status, or whether he left California unaware he would be violating the terms of his probation, and that Petitioner had failed to provide the beginning and ending dates of his alleged mental disability.  (See 7/3/06 Order at 6.)  The Order remanded with instructions to give Petitioner an opportunity to demonstrate why equitable tolling should apply here.  (Id. at 6-7.)

In response to Judge Lorenz' remand Order, Petitioner argues that it would be unfair to dismiss his federal petition without reaching the merits of his claims for several reasons.  First, he contends the probation department could have discovered that he was not reporting sometime within the fourteen month period between his release from custody and the issuance of a warrant for his arrest, but failed to do so, and that if they would have done so he would have been on notice that he was on probation within time to file a timely challenge to his conviction.  (Pet.'s Amended Opp. at 4.)  Next, he contends his medical condition is "fluid," in that it changes from day to day, and is characterized by psychological and physical disabilities involving chronic pain, bipolar disorder with mania, schizophrenia with hallucinations, and blackouts, and he contends that even if he is competent one day "to conform his conduct by knowledge," he may be unable to do so the next.  (Id. at 4, Ex. 1 at 3.)  In support of this contention, he submits a number of documents, including: (1) an admission form from North Dakota State Hospital dated April 7, 1998, which includes a current mental status and a medical history; (2) a "Canyon County Booking Form" dated September 12, 1998, which contains answers to medical history questions apparently given upon his arrest in Idaho; (3) an order from an Idaho state court dated December 12, 1986, releasing Petitioner from custody on his own recognizance on the condition that he complete a mental health counseling program; (4) an order of conditional filing from that

same court dated August 24, 2005, stating that "the court is aware that Plaintiff suffers from mental illness and may have difficulty understanding that his prior lawsuits were dismissed"; (5) a letter dated February 29, 2000, from Mesa Vista Hospital listing the dates he received service there, the names of the attending physicians and their diagnoses; and (6) documents related to the Americans with Disabilities Act.  (Id. Ex. 1 at 4-36.)  Petitioner repeats his allegation that the state's failure to accommodate his mental disability should excuse his late filing.  (Id. at 15)  He also argues that he is actually innocent of the crime to which he pled guilty.  (Id. at 16-26.)  Finally, Petitioner asks the Court to reclassify his federal habeas petition as an appropriate petition under the All Writs Act in order to avoid the limitations placed on habeas petitions filed under 28 U.S.C. § 2254.  (Id. at 6-8, 27.)

AEDPA's one-year statute of limitations is subject to equitable tolling.  Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530, 540 (9th Cir. 1998). However, the Ninth Circuit in Beeler noted that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."  Id. (quoting Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996)); Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002).  The burden is on Petitioner to show that the "extraordinary circumstances" he has identified were the proximate cause of his untimeliness, rather than merely a lack of diligence on his part.  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003); Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003).  Equitable tolling "is unavailable in most cases."  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).  "[T]he threshold necessary to trigger equitable tolling (under AEDPA) is very high, lest the exceptions swallow the rule."  Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002).

### i)  Mental condition

Petitioner first contends that his mental condition prevented him from filing on time. Assuming that Petitioner suffers from a mental condition affecting his ability to litigate his claims, such a condition would certainly amount to "an extraordinary circumstance beyond his

control." However, Petitioner must also demonstrate that his mental condition was the proximate cause of his untimeliness, as opposed to merely a lack of diligence on his part. Spitsyn, 345 F.3d at 799. With respect to his ability to petition the state court for relief from his conviction on the basis that he was incompetent to enter a plea or that he was actually innocent of the crime for which he pled guilty, Petitioner actually did so. He filed a habeas petition in the state supreme court which contains allegations and citations sufficient to present such a claim in all respects other than its untimeliness, and he alleges that he filed similar requests for relief in the state superior and appellate courts. Petitioner also followed-up on his motion to withdraw his guilty plea after he did not receive confirmation of its receipt by the trial court. In addition, the present federal petition adequately articulates the basis for Petitioner's federal claims. Thus, it is clear that his mental condition did not prevent him from challenging his conviction.

Neither can Petitioner demonstrate that his mental condition prevented him from challenging his conviction in a timely manner. His contention in this regard is based on the allegation that he was unaware he was sentenced to or serving a term of probation. Nowhere does he allege his mental condition prevented him from being aware that he had been convicted of a crime following a guilty plea. Rather, his attempts to challenge his conviction in the state and federal courts demonstrates exactly the opposite. Petitioner served approximately one year in the San Diego County Jail following his conviction, and he only began a challenge to his conviction after he learned that his probation had been violated. If Petitioner was challenging his probation violation, or perhaps even the imposition of probation as a part of his sentence, then his knowledge of when his probation was violated might be relevant to the timing of such a challenge. However, as Petitioner is simply challenging his guilty plea, his probation status is immaterial. Petitioner admits that his mental condition is "fluid" and that there were necessarily periods during his incarceration in the San Diego County Jail for his offense that he was able to file a challenge to his conviction, just as he has been able at times to file state and federal challenges since his release. It was Petitioner's lack of diligence for the approximately one and one-half years between when he entered his guilty plea and when his probation was revoked which caused his challenge to his conviction to be untimely, not his mental condition.

Even to the extent he contends his mental illness prevented him from understanding at the time he entered his plea that he was not guilty, his entire argument in this regard is based on the assumption that he should not have been permitted to plead guilty, or the judge should not have accepted his guilty plea, because he could not have been guilty of petty theft.  That in turn is based on his contention that the prosecution was unable to prove that he formed the intent to permanently deprive the owner of the property he was convicted of stealing because he never left the drug store where he was arrested after taking several watches from a shelf.  Petitioner is incorrect in his contention that he could not be guilty of theft because he could not have formed the necessary intent to permanently deprive the owner of the property.  "[O]ne need not remove property from the store to be convicted of theft of the property from the store. . . . One need only take possession of the property, detaching it from the store shelves or other location, and move it slightly with the intent to deprive the owner of it permanently."  People v. Shannon, 66 Cal.App.4th 649, 654, 78 Cal.Rptr.2d 177, 180 (1998) (citations omitted).

Accordingly, Petitioner has not carried his burden of demonstrating that a mental disability or disorder amounted to an extraordinary circumstance beyond his control which prevented him from filing his petition in a timely manner.

**ii)  actual innocence**

Petitioner next contends he is actually innocent of the crime to which he pled guilty.  The Ninth Circuit has left open the possibility that a petitioner who can satisfy the "actual innocence gateway" of Schlup v. Delo, 513 U.S. 298 (1995), can have the merits of his federal habeas claims heard notwithstanding the failure to file the federal petition within the one-year statute of limitations.  Majoy v. Roe, 296 F.3d 770 (9th Cir. 2003).  The Court need not resolve this open issue because Petitioner has not satisfied the Schlup gateway.

"Actual innocence" means factual innocence, not merely legal insufficiency; a mere showing of reasonable doubt is not enough.  See Wood v. Hall, 130 F.3d 373, 379 (9th Cir. 1997).  To show actual innocence, Petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  Id.  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new

reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

Petitioner contends that he was arrested for shoplifting after he had taken several watches off the counter at a drug store, but that since he was arrested inside the store, there was no evidence that he formed the requisite intent to permanently deprive the owner of the property. As Petitioner relies only on evidence which was available at the time he entered his plea, he cannot succeed on a claim of actual innocence.  Id.  Such a claim is in any case without merit. Shannon, 66 Cal.App.4th at 654 ("[O]ne need not remove property from the store to be convicted of theft of the property from the store. . . . One need only take possession of the property, detaching it from the store shelves or other location, and move it slightly with the intent to deprive the owner of it permanently.")

**iii)  Americans with Disabilities Act**

Petitioner next contends it was the failure to accommodate his mental disability which prevented him from filing his petition on time.  However, as set forth above, his failure to timely file his petition was not caused by his mental condition, but by his lack of diligence in pursuing his state court remedies while he was serving his sentence in jail and on probation.  Petitioner has not established that the failure to accommodate his alleged disability was the proximate cause of his failure to file his petition on time.  Rather, as set forth above, it is clear that Petitioner's mental disability did not prevent him from presenting a challenge to his conviction, and that it was his lack of diligence which caused him to begin his attack after the limitations period expired.

**iv)  All Writs Act**

Finally, Petitioner request the Court to construe this action as another type of petition for relief under the All Writs Act, one which is not subject to AEDPA's one-year statute of limitations, or to recharacterized his claims in a manner which would permit him to survive such a challenge.  Because Petitioner is a state prisoner challenging a state conviction, habeas relief

pursuant to 28 U.S.C. § 2254 is the only avenue for him to challenge his state conviction in this Court.  White v. Lambert, 370 F.3d 1002, 1007 (9th Cir. 2004) (section 2254 is the only basis for a habeas petition brought by a person "in custody pursuant to a state court judgment."); United States v. Valdez-Pacheco, 237 F.3d 1077, 1079 (9th Cir. 2001) (common law writs such as audita querela and corum nobis survive "only to the extent they fill 'gaps' in the current systems of postconviction relief.").

For all the forgoing reasons, the Court finds that Petitioner has not carried his burden of demonstrating that he is entitled to equitable tolling of the statute of limitations.  Spitsyn, 345 F.3d at 799; Stillman, 319 F.3d at 1203; Miranda, 292 F.3d at 1066; Miles, 187 F.3d at 1107. Accordingly, the Court recommends granting Respondent's Motion to Dismiss on the basis that this action was commenced after the expiration of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1).

## IV.

## CONCLUSION AND RECOMMENDATION

After thorough review of the record in this matter and based on the foregoing analysis, **IT IS HEREBY RECOMMENDED** that the Court:

(1)    deny in part Respondent's Motion to Dismiss to the extent it seeks dismissal of the Petition on the basis that the claims are unexhausted;

(2)    deny in part Respondent's Motion to Dismiss to the extent it seeks dismissal on the basis of the fugitive disentitlement doctrine;

(3)    grant Respondent's Motion to Dismiss on the basis that this action was commenced after the expiration of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1); and

(4)    enter judgment dismissing this action with prejudice as untimely.

**IT IS ORDERED** that no later than **February 20, 2007**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

1     **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

2    Court and served on all parties no later than **March 6, 2007**.  The parties are advised that failure

3    to file objections with the specified time may waive the right to raise those objections on appeal

4    of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst,

5    951 F.2d 1153, 1156 (9th Cir. 1991).

6

7    DATED:  January 18, 2007

8                                                    _____
                                                     LOUISA S PORTER
9                                                    United States Magistrate Judge

10

11   cc: The Honorable M. James Lorenz
          All parties
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28